**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WABASH CASTINGS, INC., a Michigan corporation, | ) ) ) |
| Plaintiff/Counter-Defendant, | ) ) ) |
| v. | ) ) |
| FUJI MACHINE AMERICA CORPORATION, an Illinois corporation, | ) ) ) ) |
| Defendant/Counter-Plaintiff. | ) |

Case No. 16 C 3629

Judge Amy J. St. Eve

## ORDER

The Court denies Plaintiff/Counter-Defendant's motion to dismiss Counts I and II of the First Amended Counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6). [53]. Plaintiff/Counter-Defendant's answer to the First Amended Counterclaim is due on or before November 14, 2016. Status hearing set for November 30, 2016 is stricken and reset to November 16, 2016 at 8:30 a.m.

## STATEMENT

On July 29, 2016, Plaintiff/Counter-Defendant Wabash Castings, Inc. ("Wabash") filed a six-count Second Amended Complaint against Defendant/Counter-Plaintiff Fuji Machine America Corporation ("Fuji") based on the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). On August 12, 2016, Fuji filed a two-count First Amended Counterclaim alleging breach of contract and account stated claims. Before the Court is Wabash's motion to dismiss both Counts I and II of Fuji's Counterclaim. For the following reasons, the Court denies Wabash's motion.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Also, district courts can take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Ennenga v. Starns,* 677 F.3d 766, 773 (7th Cir. 2012). Similarly, courts may consider documents attached to the pleadings without converting the motion to dismiss into a motion summary judgment, as long as the documents are referred to in the complaint and central to the plaintiff's claims. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014); Fed.R.Civ.P. 10(c).

## BACKGROUND

In its Second Amended Complaint, Wabash, a Michigan corporation, alleges that it is an aluminum casting, machining, assembly, and testing producer in the automotive industry. (R. 43, Second Am. Compl. ¶ 2.) Wabash asserts that it holds title to certain claims after acquiring the assets of certain Harvey Entities, discussed below. (*Id*. ¶¶ 2, 5, 24, 25.) Further, Wabash alleges that the present lawsuit relates to various claims arising from Fuji's failure to supply properly functioning machinery used by the Harvey Entities. (*Id*. ¶¶ 1, 11.) At issue in this motion are the "Harvey Contracts," which involve certain purchase orders involving Fuji, an Illinois corporation that sells and services automated machines and tools, and certain Harvey Entities. (*Id*. ¶¶ 3, 10.) Fuji alleges that Wabash is the assignee of the "Harvey Contracts." (R. 49, First Am. Counter. ¶¶ 27, 36.)

In its First Amended Counterclaim, Fuji alleges that on or about July 17, 2012, Harvey Industries Die Castings, LLC ("Harvey Castings") submitted to Fuji a purchase order for one Fuji lathe at the price of $666,164.00 ("PO 2621") and a purchase order for another Fuji lathe for $816,500.00 ("PO 2622"). (*Id*. ¶ 4.) Pursuant to PO 2621, Fuji maintains that it delivered and installed two Fuji lathes, one bearing serial number SE0095413 (the "95413 Lathe") and another bearing a serial number of SE0095414 (the "95414 Lathe"), at Harvey Castings' Aiken, South Carolina facility and that Harvey Castings accepted both lathes and placed them into production. (*Id*. ¶ 5.)

In addition, Fuji alleges that on or about July 25, 2012, Harvey Industries, LLC ("Harvey Industries") submitted to Fuji four purchase orders (PO 96932, 96933, 96934, and 96935) for the purchase of one Fuji lathe and other equipment for the aggregate purchase price of $712,999.98. (*Id*. ¶ 6.) Fuji asserts that these four purchase orders were amended to reflect that the lathe and other equipment should be delivered to Harvey Castings' facility in Aiken, South Carolina instead of Harvey Industries in Laredo, Texas. (*Id*. ¶ 7.) Also, Fuji alleges that pursuant to PO 96932-35, Fuji delivered and installed a Fuji lathe, serial number SE007050, and other related

2

equipment (collectively, the "97050 Lathe") at Harvey Castings' Aiken, South Carolina facility, and Harvey accepted the 97050 Lathe and placed it into production. (*Id.* ¶ 8.) According to Fuji, Harvey made some, but not all, of the payments on POs 2621, 2622, and 96932-35 (collectively, "Purchase Orders"), and there remained, and still remains, an aggregate principal amount of $317,041.40 due on these Purchase Orders. (*Id.* ¶ 9.)

## ANALYSIS

In its motion to dismiss, Wabash argues that "Fuji's Counterclaim is fatally flawed because Fuji fails to state a legal basis to recover against Wabash." Specifically, Wabash argues that although Fuji alleges that it was an assignee to the applicable purchase orders, in fact, Wabash is not an assignee, but instead purchased certain claims and causes of actions relating to the Harvey Contracts pursuant to an earlier lawsuit and consequent Asset Purchase Agreement ("APA"). In support of its argument, Wabash asks the Court to take judicial notice of the court proceedings in *Callidus Capital Corp. v. Harvey Industries LLC*, No. 15-cv-10616 (E.D. Mich. March 26, 2015), based on Callidus Capital Corporation ("Callidus") loans to Harvey Industries. *See Spaine v. Cmty. Contacts, Inc.,* 756 F.3d 542, 545 (7th Cir. 2014) (courts "may take judicial notice of publicly available records of court proceedings"). Wabash also asks the Court to review documents attached to the parties' pleadings. *See* Fed.R.Civ.P. 10(c).

In the Michigan lawsuit, Callidus extended commercial loans to Harvey Industries (although not Harvey Castings) in the amount of more than $41 million in principal. (Ex. 1, 3/26/15 Stipulated Order to Appoint Receiver, at 3-5.) After Callidus filed the Michigan lawsuit against Harvey Industries to recover its debt, on June 10, 2015, a Receiver conducted an auction of Harvey Industries' assets. (15-cv-10616, R. 37, Mot. Approve Sale Assets.) Callidus was the winning bidder, and on August 18, 2015, the Michigan district court entered an order approving the sale to Callidus as the purchaser. (Ex. 4, 8/18/15 Sale Order.) The Sale Order stated that the "Lender and Purchaser" shall not be liable for any claims "other than as expressly provided for in the [Asset] Purchase Agreement." (*Id.* ¶ 11.) On October 30, 2015, the Receiver, Harvey Industries (but not Harvey Castings), Wabash, and Callidus entered into an APA and, as part of the APA, Wabash alleges that it purchased claims and causes of actions relating to Harvey Industries' and Fuji's business relationship. (Second Am. Compl. ¶ 25.) Wabash contends that the Harvey Contracts that are subject of Fuji's Counterclaim were not assigned to Wabash under the APA pursuant to the APA's Disclosure Schedule 1, which excludes: "All vendor and supplier contracts or other contracts of Seller pursuant to which Seller has any liabilities or obligations, including without limitation, purchase orders, long-term agreements, vendor and supplier agreements, tooling agreements, material releases, and any other contractual agreements." (R. 43-2, Sch. 1, ¶ 1.)

In essence, Wabash is asking the Court to construe the APA and Schedule 1 at this early stage of the proceedings without providing sufficient background and legal analysis. Courts are reluctant to construe contracts at the motion to dismiss stage, especially if the contract language is ambiguous. *See Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.,* 12 F. Supp. 3d 1092, 1100 (N.D. Ill. 2014) ("If a court determines that a contract is ambiguous, parol evidence is

3

admitted to determine the parties' intent, and the interpretation of the language becomes a question of fact that the court cannot properly determine on a motion to dismiss."). Moreover, although Wabash argues that "[t]he Asset Purchase Agreement clarifies and expressly provides that the Harvey Contracts were excluded from the sale and not assigned to Wabash," Wabash does not provide a sufficient legal analysis warranting the dismissal of Fuji's Counterclaim on this basis. Wabash, for example, does not point to the APA's governing law provision, discuss basic principles of contract construction – whether under Illinois or Michigan law[1] – nor apply these principles to the contract(s) at issue. *See, e.g., Bank of Commerce v. Hoffman,* 829 F.3d 542, 546-47 (7th Cir. 2016) (under Illinois law, "when determining whether an agreement is ambiguous, the court must construe that contract as a whole."); *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (under Michigan law, "[e]very word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided.") (citation omitted). Furthermore, Wabash does not argue that the APA is a fully integrated contract, and thus extrinsic evidence may shed light on this analysis. *See Essex Ins. Co. v. RHO Chem. Co., Inc.,* 145 F. Supp. 3d 780, 788 (N.D. Ill. 2015) ("Illinois applies the four corners rule of contract interpretation, which bars consideration of extrinsic evidence when the contract is facially unambiguous and fully integrated."); *W. Creative, Inc. v. SCI Funeral & Cemetery Purchasing Co-op., Inc.,* No. 12 C11486, 2014 WL 6986170, at *9 (E.D. Mich. Dec. 10, 2014) ("Michigan law precludes parol evidence to vary the terms of [a] fully integrated" contract). Accordingly, at this procedural posture, Wabash's first argument is unavailing.

Next, as the docket and the orders of the Michigan lawsuit reveal, Harvey Castings was not a part of the federal receivership nor a party to the APA, and in its Counterclaim, Fuji alleges that certain "Harvey Contracts" are between only Fuji and Harvey Castings, such as PO 2621 and PO 2622. (First Am. Counter. ¶¶ 4, 5.) Whether Harvey Industries controlled Harvey Castings' claims and causes of action against Fuji – as Wabash argues in a footnote in its reply brief – is a question of fact best left for summary judgment. *See Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) (arguments made in footnotes are waived); *United States v. Vitrano,* 747 F.3d 922, 925 (7th Cir. 2014) (arguments made for the first time in a reply brief are waived). Accordingly, Wabash's argument that Fuji has failed to allege a legal basis to recover against Wabash in this respect is without merit.

Construing the allegations and all reasonable inferences in Fuji's favor, Fuji has sufficiently alleged detailed facts stating a plausible claim for relief. *See Iqbal,* 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In particular, in addition to alleging that Wabash was the assignee to certain "Harvey Contracts," Fuji has provided details regarding the various purchase orders that constitute the relevant

---

[1] The APA's governing law provision states: "This Agreement shall be construed and interpreted according to the internal laws of the State of Michigan without giving effect to any applicable principles of conflicts of laws." (APA ¶ 19.)

4

Harvey Contracts. Also, Fuji maintains that Harvey Industries and Harvey Castings made some, but not all, of the payments on purchase orders, and there remains due an aggregate principal amount of $317,041.40. *See Avila v. CitiMortgage, Inc.,* 801 F.3d 777, 786 (7th Cir. 2015) (listing Illinois breach of contract elements); *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999) (listing Michigan breach of contract elements). These allegations state a facially plausible claim. *See Carlson v. CSX Transp., Inc.,* 758 F.3d 819, 827 (7th Cir. 2014) ("plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'") (citation omitted).

Wabash nonetheless argues that even if Fuji has stated a claim upon which relief could be granted, Fuji is precluded from obtaining affirmative recovery against Wabash pursuant to UCC 9-404. *See* 810 ILCS 5/9-404; MCL 440.9404. Wabash argues that under Article 9 of the UCC, Fuji cannot seek damages in the amount of $317,041.40 for the alleged breach of the purchase orders, but instead this amount must be offset by amounts owed by Fuji. In general, UCC § 9-404 concerns the assignment of an account in which the assignee has a perfected security interest. *See Insurance Repair Const. v. Saxon Mortgage Servs., Inc.,* No. 280976, 2008 WL 4927366, at *1 n.1 (Mich. Ct. App. Nov. 18, 2008). Section 9-404(a) allows "an account debtor [to] press a counterclaim against an assignee regardless of whether it rests on the contract underlying the assignee's claim against the account debtor, though a counterclaim resting on a different contract must have accrued before the account debtor received notice of the assignment." *Bank of Am., N.A. v. Illumination Station, Inc.,* No. 10 C 3061, 2012 WL 1030321, at *4 (N.D. Ill. Mar. 27, 2012). Section 9-404(b) states that "the claim of an account debtor against an assignor may be asserted against an assignee under subsection (a) only to reduce the amount the account debtor owes."

In making its argument, Wabash states "Fuji is the account debtor under section 9-102(a)(3) as an obligor under Harvey's claims and causes of action relating to Harvey's relationship with Fuji." Wabash also asserts that it is a secured party, and thus has a perfected security interest because Callidus was the secured lender to Harvey. In making these arguments, Wabash is asking the Court to construe the facts and all reasonable inferences in its favor, which is not the appropriate standard at this procedural posture. *See Roberts*, 817 F.3d at 564. Last, whether UCC 9-404 applies to the transactions at issue in the first instance is best left for summary judgment.

**Dated:** October 31, 2016

**AMY J. ST. EVE**
**United States District Court Judge**